Courtland L. Reichman
(California Bar No. 268873)
Bahrad A. Sokhansanj
(California Bar No. 285185)
MCKOOL SMITH PC
255 Shoreline Drive, Suite 510
Redwood Shores, California 94065
Telephone: (650) 394-1400
Facsimile:  (650) 394-1422
creichman@mckoolsmith.com
bsokhansanj@mckoolsmith.com

Attorneys for Plaintiff
IMMERSION CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMERSION CORPORATION, | Case No. 3:17-cv-3886 |
| Plaintiff, | |
| v. | COMPLAINT FOR PATENT INFRINGEMENT |
| FITBIT, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT

1.      Plaintiff Immersion Corporation ("Immersion" or "Plaintiff"), files this original Complaint against Defendant Fitbit, Inc. ("Fitbit" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

2.      Immersion pioneered haptic technology in electronic devices.  Haptic effects, such as tactile vibrations and forces, can provide feedback through the sense of touch to the user of an electronic device, such as a smart watch.  Founded by Stanford PhDs and located in the heart of Silicon Valley, Immersion is an award winning, global leader in haptic technology.  Immersion brings this case to stop Fitbit from using Immersion's breakthrough innovations in haptic technology without Immersion's permission.  Fitbit manufactures and sells numerous wristband fitness trackers.

Fitbit's wearable devices prominently include haptic technology created and patented by Immersion as part of their user interfaces that enable features loved by its users.  Fitbit has refused to respect Immersion's hard-earned patent rights, of which it is fully aware, launching multiple products that infringe Immersion's valuable intellectual property.   Innovation matters.   The competitive marketplace benefits when innovators like Immersion take risks to invent new products and technologies that are more engaging and make lives better, easier, and more fun.   Continued innovation is enabled and incentivized by fair play and respect for patents by everyone in the marketplace.

3.     The word "haptics" originates from the Greek word *haptikos*, meaning to be able to grasp and perceive by touch.  Haptic effects (such as tactile or touch feedback) can be produced by actuators, or motors, which create a vibration, jolt, pulse, spatial texture, or other physical sensation. Haptic hardware devices are often combined with software simulating the way in which objects interact through the sense of touch.  Touch and pressure sensors also can be used with haptic devices to measure forces exerted by the user on the graphical user interface or touch interface of a device, such as the touchscreen of a device.

4.     Immersion is a small, publicly-traded company located in San Jose, California.   It has received awards and recognitions for its many innovations, including the CLARUS Innovation award for the most innovative, market changing technology and intellectual property, CES Innovations award, and grants from the Department of Defense and the National Science Foundation.

5.     Immersion's haptic technology allows people to interact with devices through the sense of touch, thereby providing an engaging, richer, and more realistic user experience. Immersion's haptic technology enables vibrations that can be managed and controlled to create a specific haptic sensation, like a tactile "click" that simulates the feel of a mouse button when selecting an item from a menu on a touchscreen, or the feel what is being displayed, such as a heart beating or a car engine revving in a game.

6.     Immersion is leading the development of advanced haptic technology for emerging applications in which haptics are a critical component of the user interface, including mobile computing, smartphones, and wearable devices like smart watches.  Immersion's haptic development platform simplifies the design and implementation of haptic effects for developers, while ensuring that the haptics are optimized to play on platform devices — for example, Android devices.  Using Immersion's high-fidelity haptic systems, user systems are transformed with unique and customizable touch feedback effects.  For example, computerized devices can be given a "mechanical" feel by providing intuitive and unmistakable haptic confirmation of user actions.  With Immersion's haptic technology, users feel the vibrating force or resistance as they push a virtual button, scroll through a list, or press on a screen, to name only a few of many examples.

7.     Immersion's innovative haptic technology is being used today across a variety of consumer applications, including wearable devices, mobile ads, mobile video, mobile games, mobile devices, medical applications, automotive interfaces, gaming controllers, gaming, and virtual reality. Examples of Immersion's haptic technology applied to wearable devices ("tactile wearables") may be seen in a video entitled "Immersion Tactile Wearables — Make Wearables More Personal" available on YouTube at   https://www.youtube.com/watch?v=tpuX_sa2q7Q.     Immersion's technology, software, and inventions are widely found in the world's leading mobile devices.  With over 2,400 active U.S. and international patents and applications, Immersion technology has enabled over 3 billion devices worldwide.

8.     Immersion depends on patents to protect its business and cutting edge applications and technologies for haptics.   Immersion licenses its TouchSense® Platform, software and associated intellectual property to industry-leading hardware and software companies, including the manufacturers of wearable devices and other mobile devices.  Immersion's products operate on various platforms, including wearable devices, to create richer and more realistic user experiences along with putting haptic technology in games, mobile ads, virtual reality, media, and other apps to create rich tactile effects and amazing digital experiences.

9.      Immersion provides software, know-how, and intellectual property to consumer electronics companies.  Fitbit has reviewed Immersion's offerings during discussions about how the companies might work together.  Instead of working with Immersion, however, Fitbit has chosen to market its products and launch new products that incorporate haptic technology in disregard of Immersion's intellectual property.

10.     Fitbit's products initially lacked meaningful haptic technology in the user interface of its wearable devices, which sharply limited their capabilities.  In 2012, Fitbit introduced the Fitbit One, which features what Fitbit touts as its "Sleep Tracker," which provides the vibrations — haptic technology — to wake up a user while sleeping.  Then, in 2013, Fitbit publicly announced a new Wristband Activity Tracker called the Fitbit Flex.  The Fitbit Flex employs haptic technology throughout its user interface.  The Fitbit Flex's features include haptic confirmation of commands, providing haptic notifications, and the capability of users to track their quality of sleep with a silent alarm that vibrates to wake them up gently.  Subsequently, Fitbit announced the Fitbit Charge, Charge HR, and Surge fitness wristbands.  These new devices introduced popular haptic features such as expanded silent alarms and new Caller ID vibrations.  In October 2014, Fitbit publicly released a major update to Fitbit's web developer application programming interface ("API") to be used with Fitbit's Charge, Charge HR, and Surge.  The API enables further uses of haptics, and, on information and belief, Fitbit continues to allow third party developers to implement haptics by using Fitbit's API.

11.     Then, in January 2016, Fitbit introduced the Fitbit Blaze, a "Smart Fitness Watch" that, in Fitbit's words, "empowers consumers to get fit in style."  Fitbit promoted its user interface and multiple new features, including specific haptic signals for call, text and calendar notifications, vibrating alerts, exercise tracking associated with haptic feedback, and automatic sleep tracking with using particularly designed "gentle" vibrations.  These features employ the heart of Immersion's innovations in haptics-enabled user interfaces.  Fitbit continues to introduce new wearable device products to the marketplace that incorporate haptic technology to enable their user interface,

1  including, in April of this year, the Fitbit Alta HR, a combination heart rate and fitness-tracking
2  wristband.

3      12.    Immersion is a small innovator competing in a world of global consumer electronics
4  giants.  Its ability to create new haptic technologies and applications for the marketplace depends on
5  its patents.  Immersion's software and related intellectual property business provide a platform for
6  Immersion engineers to develop products and solutions with its technology partners.  The highly-
7  publicized launches and upgrades of Fitbit's current and future wearable devices that disregard
8  Immersion's patents cause Immersion to lose valuable royalties and threaten its ongoing and future
9  customer relationships.

10                                    **THE PARTIES**

11         Immersion Corporation

12      13.    Immersion was founded in 1993 by Dr. Louis Rosenberg, a pioneer in sensing
13  interfaces and feedback technology, to develop and commercialize his innovations in haptic
14  technology.  Today, Immersion is a publicly-traded company and the global leader in developing
15  haptic technology and licensing software solutions and intellectual property for enabling haptic
16  interfaces in a broad array of consumer devices.  Immersion's innovation stems from its talented
17  technologists, who make up half of its workforce and are involved in all aspects of its haptic
18  technology development including fundamental research.  These hard-working engineers continue to
19  lead the development of the next generation of haptic hardware and applications, developing
20  software solutions to enable haptic interfaces, and providing customer support.

21         Immersion Patented Technologies

22      14.    Immersion's software product offerings include its TouchSense® solutions for both
23  large and small touchscreens, mobile devices, smartphones, tablets, portable gaming handheld
24  devices, and wearable devices.  In June 2015, Immersion reached the milestone of having more than
25  3 billion devices enabled with its technologies, including tablets, smartphones, wearables, gaming
26  controllers, and automotive interfaces.

27
28

                                        **-5-**

15.     Immersion also creates new designs for the hardware of the actuators that enable haptic interfaces.  Immersion has established partnerships with manufacturers of actuator hardware and systems integrators that build devices that include actuator hardware.   Through these partnerships, Immersion provides design rules and guidelines for the actuators that are required to implement advanced haptic features.

16.     For over 20 years, Immersion has been a leading provider of haptic technology.  Immersion has been delivering haptic technology that brings the sense of touch to digital content, creating experiences that are engaging, impactful and ultimately, more real.  Immersion's tools, deep expertise, and intellectual property make high quality haptics possible.  The Institute of Electrical and Electronics Engineers ("IEEE") has recognized Immersion in its annual IEEE Spectrum Patent Power scorecards, which evaluate the technology world's most valuable patent portfolios by quantitative benchmarks.  Immersion's established and growing leadership in haptic technology is reflected by its consistent ranking in the top 20 in its industry segment.

17.     Immersion also provides offerings to content creators.  This includes its developer program, which provides app developers with a platform that optimizes haptic effects across all Android devices for all kinds of mobile content.  Immersion offers app developers a Software Development Kit (SDK) along with design resources, including sample code, predesigned effect libraries, training guides, and a technology forum.  Immersion's Touchsense® SDK allows a developer or content creator to use a curated library of haptic effects or customized haptic effects for games, videos, social apps or other kinds of mobile content.  As a result of this program, over 230 million Android mobile games employing Immersion's haptic software solutions have been downloaded.

The Haptic Experience

18.     In 1993, Immersion envisioned taking personal computing further.  Immersion's deep research into the then-experimental field of sensory technology led to its first innovation reaching the marketplace: touch feedback — haptics — in video game controllers.  Immersion's innovative technology delighted console gamers.  Immersion has not stopped since, and it has continued to

develop innovative technologies in console, PC, and mobile gaming; creating a richer user experience for mobile advertising and entertainment; and enhancing automotive environment for usability and infotainment.  Immersion has further developed innovative haptic technologies in wearable devices — with their minimal visual "real estate" — as a natural, non-visual feedback mechanism that can inform users and change their behavior.

19.   Immersion has, for example, developed a TouchSense® Haptic Enabling Kit for Wearables OEMs, which provides the ability to add tactile effects to enhance device design, as well as increase user value through instinctive alerts that convert notifications into meaningful messages.

20.   The TouchSense® Haptic Enabling Kit (HEK) offers a solution for optimal quality and effective use of haptics in wearable devices.  With proprietary actuator control techniques, and a framework for turning silent notifications into intuitive and meaningful tactile messages, the TouchSense® HEK is an end-to-end offering that enables creation, delivery and the high-quality playback of tactile effects in wearable devices.



*Instinctive tactile notifications and high-fidelity haptics in apps and UI can differentiate user experience and enhance brand perception.*

21.   In addition, Immersion provides integration services, hardware selections guidelines, custom effect design support, and reference guides to help wearable device makers implement best-in-class tactile experiences.

22.   Immersion works closely with its customers to generate new software solutions and technology concepts.  Immersion's research and development activities allow it to continue to innovate.  Immersion has a growing patent portfolio that includes over 2,400 issued patents or pending patent applications in the U.S. and other countries, including over 630 issued U.S. patents. Immersion's patent portfolio protects its innovations across the full spectrum of haptic technology

from actuator hardware, to user interface applications, to enabling touch-based messaging between mobile devices.

23.   Immersion continues to develop new ways to use haptics in digital devices for today and tomorrow.   Immersion's patent portfolio is the result of hard work and investment in research and development of haptics across various disciplines.   With over 1,100 active (granted) patents worldwide, Immersion continues to innovate and grow its portfolio of haptic technologies.

24.   Plaintiff Immersion is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 50 Rio Robles, San Jose, California, 95134.

25.   Defendant Fitbit is a corporation organized and existing under the laws of the State of Delaware and is registered to do business in the State of California, State of Florida, and State of Massachusetts.   Fitbit has its principal place of business in the State of California at 405 Howard St., Suite 550, San Francisco, CA, 94105.

## JURISDICTION AND VENUE

26.   This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 et seq. and 281-285. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

27.   Defendant Fitbit has a regular and established place of business in this District.   Fitbit was founded in 2007 as Fitbit, Inc. in San Francisco, California.   The headquarters of Fitbit, Inc. are located at 405 Howard St., Suite 550, San Francisco, California.   Upon information and belief, Fitbit also imports, offers for sale, and sells wearable health and fitness devices in this State and District, and Fitbit is therefore subject to personal jurisdiction in this District.

28.   Fitbit, Inc., directly or through intermediaries, has committed acts of infringement in this District, including, upon information and belief, developing, testing, distributing, advertising, operating, selling, offering for sale, using and/or supporting products or services that fall within one or more claims of Immersion's Patents-In-Suit.   Accordingly, venue to adjudicate whether the Patents-In-Suit are infringed is appropriate in the Northern District of California pursuant to 28 U.S.C. §§ 1391 and 1400(b).

**INTRADISTRICT ASSIGNMENT**

29.     Pursuant to Civil Local Rule 3-2(c), this is an Intellectual Property Action to be assigned on a district-wide basis.

**THE IMMERSION PATENTS**

30.     On November 15, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,059,105 ("the '105 Patent"), entitled "Haptic feedback for touchpads and other touch controls," to Louis B. Rosenberg and James R. Riegel as the named inventors after full and fair examination.  A true and correct copy of the '105 patent is attached hereto as Exhibit A and incorporated herein by reference.

31.     The '105 patent is directed to a haptic feedback planar touch control used to provide input to a computer system.  More specifically, the '105 patent is directed to providing haptic sensations output on the touch control, which enhance interactions and manipulations with user-independent events.  The objective is to enable the user to experience haptic sensations that assist and inform the user of targeting and other control tasks within the graphical environment.  The '105 patent advantageously provides haptic feedback that can assist and inform the user of interactions and events, by way of example, an appointment reminder, receipt of email, or physical effect in a game, within a graphical user interface or other environment.

32.     On January 8, 2013, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,351,299 ("the '299 Patent"), entitled "Apparatus and method for providing condition-based vibrotactile feedback," to Robert F. Cohen, Walter E. Ratzat, and Tianning Xu as the named inventors after full and fair examination.  A true and correct copy of the '299 Patent is attached hereto as Exhibit B and incorporated herein by reference.

33.     The '299 patent is directed to systems and methods for the monitoring of motion parameters of a device, such as a wristband, being physically manipulated by a user and the use of haptic feedback.  In particular, the '299 patent advantageously provides haptic feedback to alert users based on conditions relating to the motion of the device, such as surpassing a preset number of movements over a period of time or insufficient movement during a period of time.

34.     On January 28, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,638,301 ("the '301 Patent"), entitled "Systems and methods for transmitting haptic messages," to David Birnbaum, Chris Ullrich, Peter Rubin, Phong David Ngo, and Leo Kopelow as the named inventors after full and fair examination.  A true and correct copy of the '301 Patent is attached hereto as Exhibit C and incorporated herein by reference.

35.     The '301 patent is directed to systems and methods for mobile devices to be configured to exchange data or messages with each other via network interfaces and provide haptic effects partially based on the exchanged data or messages transmitting haptic messages.  In particular, the '301 patent advantageously provides haptic feedback to facilitate non-linguistic communication of content by tying data from sensors and physical effects to haptic messages.

36.     The '105, '299, and '301 patents are collectively referred to herein as the Immersion Patents-in-Suit.

37.     Immersion is the sole and exclusive owner of all rights, title, and interest to the Immersion Patents-in-Suit necessary to bring this action, including the right to recover past and future damages.  Immersion has owned all rights to the Immersion Patents-in-Suit necessary to bring this action throughout the period of Fitbit's infringement and still owns those rights to the Immersion Patents-in-Suit.  Fitbit is not currently licensed to practice the Immersion Patents-in-Suit.

38.     The Immersion Patents-in-Suit are valid and enforceable.

### FITBIT'S ACTS OF INFRINGEMENT

39.     Fitbit is unlawfully using Immersion's patented technologies.  Indeed, a significant aspect of Fitbit's business is built around the infringement of Immersion's patents, and Fitbit's wearable devices and software/API tout its offerings of haptic user interface technologies that are the subject of numerous Immersion patents, including the Patents-in-Suit.

40.     Fitbit has imported into the United States, manufactured, used, marketed, offered for sale, and/or sold in the United States, fitness wristbands and clips, heart rate-monitoring fitness wristbands, smart fitness watches, and accessories thereof that infringe the Immersion Patents-in-Suit, or induce or contribute to the infringement of the Immersion Patents-in-Suit.

**FITBIT'S INFRINGING PRODUCTS**

41.     Fitbit's accused devices have infringed and continue to infringe, directly and indirectly through induced and/or contributory infringement, one or more claims of the Immersion Patents-in-Suit by making, having made, using, importing into, offering to sell, or selling in the United States, and/or providing instructions for one or more of the products identified in this Complaint, including Fitbit products with haptic feedback capabilities, including but not limited to a vibration motor, GPS, 3-axis accelerometers, Digital compass, Optical heart rate monitor, Altimeter, Ambient light sensor, and/or Touch screen hardware and software/firmware/APIs that enable the Haptic Feedback, which allows the tracker to vibrate with alarms (e.g., Silent Alarm feature), goals (e.g., Motivation Goal feature), and notifications (e.g., Sleep Tracker, Sleep Insights, Exercise Calendar, PurePulse, and Aria Wi-Fi Smart Scale features) including without limitation, the Fitbit Flex, Fitbit Flex 2, Fitbit Alta, Fitbit Alta HR, Fitbit Charge, Fitbit Charge 2, Fitbit Charge HR, Fitbit Blaze, and Fitbit Surge (collectively the "Fitbit Accused Products").  Further discovery may reveal additional infringing products and/or models, such as the yet to-be-released smart fitness watch, codenamed "Higgs," which has been the subject of recent press reports.

42.     In accordance with 35 U.S.C. § 287, Fitbit has had knowledge of the Immersion Patents-in-Suit prior to the filing of this Complaint and/or the date this Original Complaint was served upon Fitbit.  Despite such notice, Fitbit continues to make, use, import into, market, offer for sale, and/or sell in the United States products that infringe the Immersion Patents-in-Suit.

**COUNT I**

**INFRINGEMENT OF THE '105 PATENT**

43.     Paragraphs 1 through 42 are incorporated by reference as if fully set forth herein.

44.     On information and belief, Fitbit has directly infringed and will continue to infringe, directly and indirectly, through induced and/or contributory infringement, one or more claims of the '105 patent, including at least claims 19, 20, and 21, by making, using, selling, offering for sale, or importing in this District and elsewhere into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products, devices, systems and/or methods

covered by one or more claims of the '105 patent including, but not limited to, the Fitbit Alta, Fitbit Alta HR, Fitbit Charge, Fitbit Charge 2, Fitbit Charge HR, Fitbit Blaze, and Fitbit Surge.  The accused devices that infringe one or more claims of the '105 patent include, but are not limited to, at least the Fitbit Accused Products.  Further discovery may reveal additional infringing products and/or models.

45.    For example, Fitbit has directly infringed one or more claims of the '105 patent by making, using, offering to sell, and/or selling the Fitbit Blaze product, in a manner that infringes the claims of the '105 patent.  For instance, Fitbit's Blaze product infringes one or more claims of the '105 patent, including but not limited to claim 19, by practicing a haptic feedback device.  Fitbit's Blaze includes a processor that receives an input signal associated with a user-independent event (e.g., a calendar reminder) triggered from a paired smartphone and generates a force signal that actuates a vibration motor (e.g., a coin-type, eccentric rotating mass (ERM) motor), as illustrated in the images below taken from the Fitbit Blaze Product Manual.  (*See, e.g.*, Fitbit, Inc., *Fitbit Blaze, Product Manual*, p. 22, which Fitbit provides online through https://help.fitbit.com and directly at https://staticcs.fitbit.com/content/assets/help/manuals/manual_blaze_en_US.pdf).  Further, by way of example, Fitbit's Blaze is a smart fitness watch with a touch screen, which contains a vibration motor (e.g., actuator) that is configured to receive the signal (e.g., force signal) and causes the tracker to vibrate (e.g., haptic effect) based on that signal.  Immersion is identifying the Fitbit Blaze as a representative product for other Accused Products including the Fitbit Alta, Alta HR, Charge, Charge 2, Charge HR, and Surge.  Immersion is identifying claim 19 as a representative claim. Immersion may assert other claims in conjunction with the local rules, and Immersion incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to N.D. Cal. Local Patent Rule 3-1.







46.     Fitbit indirectly infringes the '105 patent, under 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, and customers, and end-users, in this District and elsewhere in the United States.   For example, manufacturers, resellers, developers, customers, and end-users of the Fitbit Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '105 patent.  Fitbit also received notice of the '105 patent prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.

47.     Fitbit's affirmative acts of manufacturing, selling, distributing and/or otherwise making available the Fitbit Accused Products; causing others to manufacture, sell, distribute, and/or make available the Fitbit Accused Products; and/or providing instructions, documentation, and/or other information directed to customers, end-users, resellers, and distributors regarding using the Fitbit Accused Products in the way Fitbit intends, including in-store technical support, online technical support, product manuals, online documents, and other information about the Fitbit Accused Products induce Fitbit's manufacturers, resellers, developers, customers and/or end-users to

make, use, sell, and/or offer to sell the Fitbit Accused Products in the way that Fitbit intends, in order to directly infringe the '105 patent.  On information and belief, Fitbit has performed and continues to perform these affirmative acts, with knowledge of the '105 patent and with knowledge or willful blindness that the induced acts directly infringe the '105 patent.

48.     For example, Fitbit provides a setup website to help and support the user to "Get the Fitbit App to Set Up Your Device" at https://www.fitbit.com/setup.  At that site, Fitbit specifically instructs the user to download the Fitbit App from one of several websites (e.g., Google Play, Apple App Store, or Windows Store).  Further, if the user does not have a mobile device, Fitbit instructs that the user can download an application for an Apple or Windows personal computer.  Fitbit provides further instructions and help to set up a user's device, as well.



49.     Fitbit also provides answers on its website to popular topics and questions that other users have had setting up their devices.  Further, Fitbit provides a support community to educate users about certain features.  (*See* Fitbit, Inc., "Get the skinny on your Fitbit device," http://help.fitbit.com/.)  Fitbit provides web pages with answers to popular topics and

-14-

questions that other users have had setting up their devices.  Further, Fitbit provides a support community to educate users about certain features.  In addition, users can request certain features or options to be implemented in the Fitbit's software and/or API such as on Fitbit's "Ideas Board" online forum, which Fitbit provides at https://community.fitbit.com/t5/Feature-Requests/idb-p/features.  Fitbit also provides How-To Videos to help users, as illustrated in the screenshot shown below.  (*See, e.g.*, Fitbit Inc., "How-To Videos," https://www.fitbit.com/how-to ("Get started with your Fitbit products and find out how to make the most of features like sleep tools, exercise modes and more, with these short and sweet how-to videos.").)



50.     As another example, Fitbit provides Fitbit Blaze and Fitbit Flex 2 manuals to help the user set up and use the features of the device, along with user manuals for all Fitbit devices, which may be accessed through links which Fitbit provides at http://help.fitbit.com.   *See, e.g.*, http://help.fitbit.com (providing links to access user manuals for the Fitbit Blaze, Flex 2, and other Fitbit products).  For instance, the Fitbit Blaze manual teaches and explains to the user how to set up notifications and haptic effects for notifications.  Fitbit also provides an online Help page to answer a user's question, "How do I get notifications from my mobile devices?" at http://help.fitbit.com/articles/en_US/Help_article/1979.  As shown in the exemplary screenshot below, this page provides further teaching and explanation about notifications and how they sync

between the mobile phone and the Fitbit Blaze, as well as other devices.  This page teaches the user about the benefits of the notifications and provides options for controlling the delivery of notifications.  It further teaches the user that the user "may need to modify settings specific to the user's mobile device and tracker."  The help page further teaches how the notifications work.  These instructions are provided for other Fitbit devices as well.

**HOW DO I SET THEM UP?**

Besides the Notifications options in the Fitbit app, you may need to modify settings specific to your mobile device and tracker. To review all the requirements choose the type of mobile device you're using below.

If you're not sure whether your device runs on iOS or Android, note that iOS is exclusive to Apple products like the iPhone.

**IOS MOBILE DEVICE**                                                                                ∨

**ANDROID MOBILE DEVICE**                                                                            ∧

Setting up notifications may take several minutes. Since you'll need to make a choice about encryption, before you get started we recommend reading our brief explanation at Are notifications sent from my Android device encrypted?

**STEP 1: VERIFY YOUR MOBILE DEVICE SETTINGS**

On your mobile device go to your system settings and verify these conditions:

- The Android version is 4.3 or higher. This can usually be found under About Phone or About Device.
- Bluetooth is turned on. Bluetooth is what allows your mobile device to communicate with Fitbit, so it must be on for a notification to transmit.
- Do Not Disturb is turned off. When your device isn't disturbing you with alerts and notifications, it also can't send them to your tracker. This setting can usually be found under Sound and Notification.
- A default SMS app is selected. If your Android version is 5.0+ make sure a default is shown. This setting can usually be found under More.
- Default calendar app is selected. If your Android version is 5.0+ make sure a default is shown. This can usually be found under More.

If you have a Blaze and want to get notifications from third-party apps, make sure your mobile device is allowed to send them. You can usually find the notifications permissions under Settings > Apps.

51.     Fitbit also indirectly infringes the '105 patent, under 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as manufactures, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States.  Fitbit also received notice of the '105 Patent prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.

52.     Fitbit's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Fitbit Accused Products and causing the Fitbit Accused Products to be manufactured, used, sold, and offered for sale, contribute to Fitbit's manufacturers, resellers, developers, customers, and/or end-users making or using, selling, and/or offering to sell the Fitbit Accused Products, such that the '105 patent is directly infringed.  The haptic capabilities of the Fitbit Accused Products, including a vibration motor, GPS, 3-axis accelerometers, Digital compass, Optical heart rate monitor, Altimeter, Ambient light sensor, and/or Touch screen hardware and software/firmware/APIs that enable the Haptic Feedback, which allows the tracker to vibrate with alarms (e.g., Silent Alarm), goals (e.g., Motivation Goal), and notifications (e.g., Call, Text, Calendar, Email, Third-Party App, Sleep Tracker, Sleep Insights, Exercise Calendar, PurePulse, Aria Wi-Fi Smart Scale) are material, have no substantial non-infringing uses, and are known by Fitbit to be especially made or especially adapted for use in an infringement of the '105 patent.

53.     Fitbit's infringement of the '105 patent has been and continues to be willful.  Upon information and belief, Fitbit knew or should have known that it directly infringed and was causing others to directly infringe the '105 patent.  Fitbit received notice of the '105 patent and the infringement of the patent's claims by Fitbit products prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.  Fitbit has continued to infringe in wanton disregard of Immersion's patent rights.

54.     Fitbit's continued infringement of the '105 patent has damaged and will continue to damage Immersion.

## COUNT II

## INFRINGEMENT OF THE '299 PATENT

55.     Paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56.     On information and belief, Fitbit has directly infringed and will continue to infringe, directly and indirectly, through induced and/or contributory infringement, one or more claims of the '299 Patent, including at least claims 14, 15, 16, 18, 20 and 22, by making, using, selling, offering for sale, or importing in this District and elsewhere into the United States, or by intending that others

1   make, use, import into, offer for sale, or sell in the United States, products, devices, systems and/or

2   methods covered by one or more claims of the '299 Patent including, but not limited to, the Fitbit

3   Flex, Fitbit Flex 2, Fitbit Alta, Fitbit Alta HR, Fitbit Charge, Fitbit Charge 2, Fitbit Charge HR,

4   Fitbit Blaze, and Fitbit Surge.  The accused devices that infringe one or more claims of the '299

5   Patent include, but are not limited to, at least the Fitbit Accused Products.  Further discovery may

6   reveal additional infringing products and/or models.

7        57.     For example, Fitbit has directly infringed one or more claims of the '299 patent by

8   making, using, offering to sell, and/or selling the Fitbit Blaze product, in a manner that infringes the

9   claims of the '299 patent.  For instance, Fitbit's Blaze product infringes one or more claims of the

10  '299 patent, including but not limited to claim 14, by practicing an apparatus as described herein.

11  Fitbit's Blaze contains sensors (e.g., A MEMS 3-axis accelerometer, which tracks your motion

12  patterns; an altimeter, which tracks altitude changes; an optical heart rate tracker; an ambient light

13  sensor; and a 3-axis magnetometer) that sense the motion of the Blaze and provide outputs based on

14  the sensed motion.  For example, Fitbit's Blaze also maintains a timer providing periodic timer

15  output, and that timer, for example, is associated with the Blaze's "silent alarms" feature.

16  Additionally, the periodic timer output is associated with Blaze's "Reminder to Move" feature.

17  Further, on information and belief, the Fitbit Blaze includes a vibration motor that is configured to

18  remind the user to move by walking, or accumulating counts, at least 250 steps (i.e., a threshold)

19  each hour, as illustrated, by way of example, in the images of Fitbit's documentation provided on its

20  website shown below.  If the user has not walked at least 250 steps, at 10 minutes before the hour the

21  user will feel a vibration and see a reminder on the tracker.  When a user reaches the 250 step goal

22  (or threshold), there is an on-screen celebration accompanied by a vibration pattern (i.e., haptic

23  output) for reaching the milestone.  Immersion is identifying the Fitbit Blaze as a representative

24  product for other infringing Accused Products including, on information and belief, at least the Alta,

25  Alta HR, Charge 2, Charge HR, and Flex 2.  Immersion is identifying claim 14 as a representative

26  claim.  Immersion may assert other claims in conjunction with the local rules.  Immersion

27

28

**-18-**

incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to N.D. Cal. Local Patent Rule 3-1.

## What is a reminder to move?

The reminders to move feature on Fitbit Alta, Fitbit Blaze, Fitbit Charge 2, and Fitbit Flex 2 nudges you to walk at least 250 steps each hour. If you haven't walked 250 steps, at 10 minutes before the hour you'll feel a vibration and see a reminder on your tracker.

 

58.     Fitbit indirectly infringes the '299 Patent, under 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, and customers, and end-users, in this District and elsewhere in the United States.   For example, manufacturers, resellers, developers, customers, and end-users of the Fitbit Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '299 patent.   Fitbit received notice of the '299 patent prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.

59.     Fitbit's affirmative acts of manufacturing, selling, distributing and/or otherwise making available the Fitbit Accused Products; causing others to manufacture, sell, distribute, and/or make available the Fitbit Accused Products; and/or providing instructions, documentation, and/or other information directed to customers, end-users, resellers, and distributors regarding using the Fitbit Accused Products in the way Fitbit intends, including in-store technical support, online technical support, product manuals, online documents, and other information about the Fitbit Accused Products induce Fitbit's manufacturers, resellers, developers, customers and/or end-users to

make, use, sell, and/or offer to sell the Fitbit Accused Products in the way that Fitbit intends, in order to directly infringe the '299 patent.  On information and belief, Fitbit has performed and continues to perform these affirmative acts, with knowledge of the '299 patent and with knowledge or willful blindness that the induced acts directly infringe the '299 patent.

60.     For example, Fitbit provides a setup website to help and support the user to "Get the Fitbit App to Set Up Your Device" at https://www.fitbit.com/setup.  At that site, Fitbit specifically instructs the user to download the Fitbit App from one of several websites (e.g., Google Play, Apple App Store, or Windows Store).  Further, that site instructs that if a user does not have a mobile device, that user can download an application for Mac or PC.  Fitbit also provides answers to popular topics and questions that other users have had setting up their devices.  Further, Fitbit provides a support community to educate users about certain features.  By way of example, users can request certain features or options to be implemented in the Fitbit's software and/or API at Fitbit's "Ideas Board," which Fitbit provides at https://community.fitbit.com/t5/Feature-Requests/idb-p/features.     Fitbit also provides How-To Videos to help users on its website at  https://www.fitbit.com/how-to.  As another example, Fitbit publishes user manuals for the Fitbit Blaze, Fitbit Flex 2, and other Fitbit devices, available through links at https://help.fitbit.com, which provide instructions that help the user set up, use, and configure the device and its features.

61.     Fitbit provides further instructions regarding infringing features of Fitbit products in its online help pages.  By way of example, Fitbit provides a web page to answer a user's question "What are hourly activity goals?" at https://help.fitbit.com/articles/en_US/Help_article/1878.  This page contains instructions that instruct the user on how to view their "Hourly Activity" progress as illustrated in the excerpted image and text shown below.  As another example, Fitbit provides a web page to provide the answer to a user's question, "What is a reminder to move?" at http://help.fitbit.com/articles/en_US/Help_article/1986.  This page instructs the user on how to set up and configure the "Reminder to Move" feature on Fitbit devices, including instructions on how to set up and configure the Reminder to Move feature through the Fitbit App and Fitbit Dashboard.



**HOW DO I TRACK MY PROGRESS?**

The Hourly Activity tile on your dashboard shows the number of hours you met your 250-step goal so far today.

9 AM          5 PM

4 of 9 hrs
250+ steps per hour

Open the tile to see a graph showing whether each hour tracked was active or stationary for the last week. Swipe to see a second graph showing your longest stationary period. Note that time asleep is not included in this graph, and you must be inactive for at least 10 consecutive minutes before that time is considered stationary.

62.    Fitbit also indirectly infringes the '299 patent, under 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as manufactures, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States.  Fitbit also received notice of the '299 Patent prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.

63.    Fitbit's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Fitbit Accused Products and causing the Fitbit Accused Products to be manufactured, used, sold, and offered for sale, contribute to Fitbit's manufacturers, resellers, developers, customers, and/or end-users making or using, selling, and/or offering to sell the Fitbit Accused Products, such that the '299 patent is directly infringed.  The haptic capabilities of the Fitbit Accused Products, including a vibration motor, GPS, 3-axis accelerometers, Digital compass, Optical heart rate monitor, Altimeter, Ambient light sensor, and/or Touch screen hardware and software/firmware/APIs that enable the Haptic Feedback, which allows the tracker to vibrate with alarms (e.g., Silent Alarm feature), goals (e.g., Motivation Goal feature), and notifications (e.g., Sleep Tracker, Sleep Insights, Exercise Calendar, PurePulse, and Aria Wi-Fi Smart Scale features) are material, have no substantial non-infringing uses, and are known by Fitbit to be especially made or especially adapted for use in an infringement of the '299 patent.

64.     Fitbit's infringement of the '299 patent has been and continues to be willful.  Upon information and belief, Fitbit knew or should have known that it directly infringed and was causing others to directly infringe the '299 patent.  Fitbit received notice of the '299 patent and the infringement of the patent's claims by Fitbit products prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.  Fitbit has continued to infringe in wanton disregard of Immersion's patent rights.

65.     Fitbit's continued infringement of the '299 patent has damaged and will continue to damage Immersion.

## COUNT III

## INFRINGEMENT OF THE '301 PATENT

66.     Paragraphs 1 through 65 are incorporated by reference as if fully set forth herein.

67.     On information and belief, Fitbit has directly infringed and will continue to infringe, directly and indirectly, through induced and/or contributory infringement, one or more claims of the '301 patent, including at least claims 27, 28, 29 and 31, by making, using, selling, offering for sale, or importing in this District and elsewhere into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products, devices, systems and/or methods covered by one or more claims of the '301 patent including, but not limited to, the Fitbit Alta, Fitbit Alta HR, Fitbit Charge, Fitbit Charge 2, Fitbit Charge HR, Fitbit Blaze, and Fitbit Surge.  The accused devices that infringe one or more claims of the '301 patent include, but are not limited to, at least the Fitbit Accused Products.  Further discovery may reveal additional infringing products and/or models.

68.     For example, Fitbit has directly infringed one or more claims of the '301 patent by making, using, offering to sell, and/or selling the Fitbit Blaze product, in a manner that infringes the claims of the '301 patent.  For instance, Fitbit's Blaze product infringes one or more claims of the '301 patent, including but not limited to claim 27, by practicing a system as described herein.  Fitbit's Blaze, a smart fitness watch, contains a processor configured to receive signals from sensors contained in the watch (e.g., a MEMS 3-axis accelerometer, which tracks the watch's motion

-22-

patterns; an altimeter, which tracks altitude changes; an optical heart rate tracker; an ambient light sensor; and a 3-axis magnetometer).  Further, the Fitbit Blaze's processor is configured to receive touch screen interactions as the user navigates to different menus.  On information and belief, a user can use mobile device as a second device to transmit signals via Bluetooth.  An example of this is the transmission of Run Cue goals from another mobile device, e.g., a mobile phone running Fitbit's mobile app, to the Blaze.  The Fitbit Blaze is configured such that using the Run menu on the Fitbit Blaze, user can execute the Run exercise tracker, a cue will be displayed on the Blaze screen accompanied by a vibration effect produced by the vibration motor of the Fitbit Blaze under the control of the processor (i.e., haptic output) once the user reaches Run Cue goals.  This is illustrated by images below of the Fitbit mobile app showing the Run Cue feature and drop-down options, and the images of Fitbit's Blaze displaying the Rue Cue achievement.  Immersion is identifying the Blaze Smart Fitness Watch as a representative product for other infringing Accused Products including, on information and belief, at least the Fitbit Alta, Alta HR, Charge, Charge 2, Charge HR, and Surge.  Immersion is identifying claim 27 as a representative claim.  Immersion may assert other claims in conjunction with the local rules. Immersion incorporates by reference its Disclosure of Asserted Claims and Infringement Contentions pursuant to N.D. Cal. Local Patent Rule 3-1.

  

69.     Fitbit indirectly infringes the '301 patent, under 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, and customers, and end-users, in this District and elsewhere in the United States.   For example, manufacturers, resellers, developers, customers, and end-users of the Fitbit Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '301 patent.  Fitbit also received notice of the '301 patent prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.

70.     Fitbit's affirmative acts of manufacturing, selling, distributing and/or otherwise making available the Fitbit Accused Products; causing others to manufacture, sell, distribute, and/or make available the Fitbit Accused Products; and/or providing instructions, documentation, and/or other information directed to customers, end-users, resellers, and distributors regarding using the Fitbit Accused Products in the way Fitbit intends, including in-store technical support, online technical support, product manuals, online documents, and other information about the Fitbit Accused Products induce Fitbit's manufacturers, resellers, developers, customers and/or end-users to make, use, sell, and/or offer to sell the Fitbit Accused Products in the way that Fitbit intends, in order to directly infringe the '301 patent.  On information and belief, Fitbit has performed and continues to perform these affirmative acts, with knowledge of the '301 patent and with knowledge or willful blindness that the induced acts directly infringe the '301 patent.

71.     Fitbit also indirectly infringes the '301 patent, under 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as manufactures, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Fitbit received notice of the '301 Patent prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.

72.     For example, Fitbit provides a setup website to help and support the user to "Get the Fitbit App to Set Up Your Device" at https://www.fitbit.com/setup.  At that site, Fitbit specifically instructs the user to download the Fitbit App from one of several websites (e.g., Google Play, Apple App Store, or Windows Store).  Further, that site instructs that if the user does not have a mobile

-24-

device, the user can download an application for Mac or PC.  Fitbit also provides answers to popular topics and questions that other users have had setting up their devices.  Further, Fitbit provides a support community to educate users about certain features.  By way of example, users can request certain features or options to be implemented in the Fitbit's software and/or API at Fitbit's "Ideas Board," which Fitbit provides at https://community.fitbit.com/t5/Feature-Requests/idb-p/features. Fitbit also provides How-To Videos to help users on its website, for example at https://www.fitbit.com/how-to.  Fitbit also publishes user manuals for the Fitbit Blaze, Fitbit Flex 2, and other Fitbit devices, which Fitbit makes available through links at https://help.fitbit.com and also provide instructions that help the user set up, use, and configure the device and its features.

73.    Fitbit also provides online help pages, which provide instructions on how to set up the "Run Cues" in the mobile device app.  By way of example, Fitbit provides a page that provides instructions in answer to a user's question, "How do I use a multisport or exercise mode on my tracker?" at http://help.fitbit.com/articles/en_US/Help_article/1935/.  At this page, Fitbit provides detailed step-by-step instructions to a user on how to sync a mobile device so as to utilize the exercise tracking features, including "Run Cues" on Fitbit devices.  Fitbit further provides a "How-to Video" that demonstrates the steps which a user would perform to sync a mobile device with a Fitbit Blaze product to utilize exercise tracking features.

74.    Fitbit's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Fitbit Accused Products and causing the Fitbit Accused Products to be manufactured, used, sold, and offered for sale, contribute to Fitbit's manufacturers, resellers, developers, customers, and/or end-users making or using, selling, and/or offering to sell the Fitbit Accused Products, such that the '301 patent is directly infringed.  The haptic capabilities of the Fitbit Accused Products, including a vibration motor, GPS, 3-axis accelerometers, Digital compass, Optical heart rate monitor, Altimeter, Ambient light sensor, and/or Touch screen hardware and software/firmware/APIs that enable the Haptic Feedback, which allows the tracker to vibrate with alarms (e.g., Silent Alarm feature), goals (e.g., Motivation Goal feature), and notifications (e.g., Sleep Tracker, Sleep Insights, Exercise Calendar, PurePulse, and Aria Wi-Fi Smart Scale features)

are material, have no substantial non-infringing uses, and are known by Fitbit to be especially made or especially adapted for use in an infringement of the '301 patent.

75.    Fitbit's infringement of the '301 patent has been and continues to be willful.  Upon information and belief, Fitbit knew or should have known that it directly infringed and was causing others to directly infringe the '301 patent.  Fitbit also received notice of the '301 patent and the infringement of the patent's claims by Fitbit products prior to the date this lawsuit was filed and/or the date this Original Complaint was served upon Fitbit.  Fitbit has continued to infringe in wanton disregard of Immersion's patent rights.

76.    Fitbit's continued infringement of the '301 patent has damaged and will continue to damage Immersion.

## DAMAGES

77.    Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

78.    As a result of Fitbit's acts of infringement, Immersion has suffered actual and consequential damages; however, Immersion does not yet know the full extent of the infringement and its extent cannot be ascertained except through discovery and special accounting.  To the fullest extent permitted by law, Immersion seeks recovery of damages at least for reasonable royalties, unjust enrichment, and benefits received by Fitbit as a result of infringing the patents-in-suit. Immersion further seeks any other damages to which Immersion is entitled under law or in equity.

## IRREPARABLE HARM TO IMMERSION

79.    Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

80.    Immersion has been irreparably harmed by Fitbit's acts of infringement, and will continue to be irreparably harmed unless and until Fitbit's acts of infringement are enjoined by this Court.  Immersion has no adequate remedy at law to redress Fitbit's continuing acts of infringement. The hardships that would be imposed upon Fitbit by an injunction are less than those faced by Immersion should an injunction not issue.  Furthermore, the public interest would be served by issuance of an injunction.

## ATTORNEYS' FEES

81.     Immersion is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## DEMAND FOR JURY TRIAL

82.     Immersion hereby demands a jury trial on its claims for patent infringement.

## PRAYER FOR RELIEF

**WHEREFORE**, Immersion respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.  A judgment that Fitbit directly and/or indirectly infringes the '105, '299, and '301 patents;

B.  An Order enjoining, permanently, Fitbit and its respective officers, directors, agents, partners, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '105, '299, and '301 patents;

C.  A judgment that Fitbit's infringement has been willful and that Fitbit's continued infringement of the '105, '299, and '301 patents is willful;

D.  A ruling that this case is exceptional and awarding Immersion its reasonable attorneys' fees under 35 U.S.C. § 285;

E.  A judgment and order requiring Fitbit to pay Immersion damages in an amount adequate to compensate Immersion for Fitbit's infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of judgment, with an accounting, as needed, as well as treble damages for willful infringement under 35 U.S.C. § 284;

F.  Award enhanced damages pursuant to 35 U.S.C. § 284;

G.  In the alternative, in the event injunctive relief is not granted as requested by Immersion, award a mandatory future royalty payable on each future product sold by Fitbit that is

found to infringe one or more of the '105, '299, and '301 patents, and on all future products which are not colorably different from products found to infringe;

H.  A judgment and order requiring Fitbit to pay Immersion's costs of this action (including all disbursements);

I.  An order for an accounting of damages;

J.  A judgment and order requiring Fitbit to pay pre-judgment and post-judgment interest to the full extent allowed under the law; and,

K.  Award such other and further relief as the Court may deem just and proper under the circumstances.

1    DATED:  July 10, 2017                  Respectfully submitted,

2                                           MCKOOL SMITH, P.C.

3
                                            By: */s/ Courtland L. Reichman*
4                                           Courtland L. Reichman
5                                           (California Bar No. 268873)
                                            Bahrad A. Sokhansanj
6                                           (California Bar No. 285185)
                                            McKool Smith, P.C.
7                                           255 Shoreline Drive, Suite 510
                                            Redwood Shores, California 94065
8                                           Telephone:(650) 394-1400
9                                           Facsimile:  (650) 394-1422
                                            creichman@mckoolsmith.com
10                                          bsokhansanj@mckoolsmith.com

11                                          Attorneys for Plaintiff
12                                          IMMERSION CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:17-cv-3886                              COMPLAINT FOR PATENT INFRINGEMENT