Courtland L. Reichman (California Bar No. 268873)
Jennifer P. Estremera (California Bar No. 251076)
MCKOOL SMITH, PC
255 Shoreline Drive, Suite 510
Redwood Shores, California 94065
Telephone: (650) 394-1400
Facsimile: (650) 394-1422
creichman@mckoolsmith.com
jestremera@mckoolsmith.com

John B. Campbell (Admitted Pro Hac Vice)
Kathy H. Li (Admitted Pro Hac Vice)
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744
jcampbell@mckoolsmith.com
kli@mckoolsmith.com

***Attorneys for Plaintiff***
**Immersion Corporation**

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | Case No. 5:17-cv-03886-LHK<br><br>**PLAINTIFF IMMERSION CORPORATION'S CLAIM CONSTRUCTION REPLY BRIEF**<br><br>DATE: May 10, 2018<br>TIME: 1:30 p.m.<br>CTRM: Courtroom 8, 4th Floor<br><br>JUDGE: Honorable Lucy H. Koh |

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

## TABLE OF CONTENTS

**Page(s)**

**I. Judicial estoppel** ..... 1

**II. DISPUTED CLAIM TERMS** ..... 2

- **A. "haptic feedback device" *('105 patent, claim 19)*** ..... 2
- **B. "one or more processors configured to receive an input signal and generate a force signal based on the input signal, wherein the input signal is associated with a user-independent event" *('105 patent, claim 19)*** ..... 2
  - **1. Fitbit fails to prove by clear and convincing evidence that a POSITA would not link the disclosed algorithm with user-independent events** ..... 4
  - **2. Fitbit fails to prove by clear and convincing evidence that the specification does not disclose how to generate a force signal based on an input signal** ..... 6
  - **3. Fitbit's detailed implementations of the algorithm are not required for a POSITA to determine the bounds of the claim** ..... 7
  - **4. The case law supports the conclusion that the structure here is sufficiently definite** ..... 9
  - **5. The force signal is a signal that defines a haptic output to a touch device** ..... 10
- **C. "generate a force signal based on the input signal" *('105 patent, claim 19)*** ..... 11
- **D. "periodic" *('299 Patent, claim 14)*** ..... 12
- **E. "a processing device that receives the sensor output and accumulates counts associated with the sensor output, the processing device providing an output to the vibrotactile device once a threshold associated with the accumulated counts is reached." *('299 patent, claim 14)*** ..... 13

**III. CONCLUSION** ..... 15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*AllVoice Computing PLC v. Nuance Commc'ns Inc.*, 504 F.3d 1236 (Fed Cir. 2007)....3, 7, 13

*Apple Inc. v. Saint Lawrence Commc'ns LLC*, IPR2017-01077, 2017 WL 4677859 (Oct. 16, 2017)....1

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008)....7, 9

*Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371 (Fed. Cir. 2008)....9

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 748 F.3d 1134 (Fed. Cir. 2014)....3, 5

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)....8

*ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012)....9

*Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG, 2017 WL 550453 (N.D. Cal. Feb. 10, 2017)....9

*IPCom GmbH & Co. v. HTC Corp.* 861 F.3d 1362 (Fed. Cir. 2017)....1

*IPLearn-Focus LLC v. Microsoft Corp.*, No. 3:14-cv-00151-JD (N.D. Cal. Dec. 12, 2014) ....1

*J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360 (Fed. Cir. 2001)....10

*Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291 (Fed. Cir. 2012)....10

*Noah Systems, Inc. v. Intuit Inc.* 675 F.3d 1302 (Fed. Cir. 2012)....14

*Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011)....9

*Seer Systems, Inc. v. Beatnik, Inc.*,
No. C 03-04636-JSW, 2006 WL 733502 (N.D. Cal. Mar. 22, 2006)............................................9

*Thorner v. Sony Comput. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012).....................................................................................12

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011)...................................................................................6, 8

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

## I. JUDICIAL ESTOPPEL

Fitbit admits that it made a strategic decision not to notify the PTAB that it contends the disputed "processor" terms are indefinite, because if it did, the PTAB could have rejected Fitbit's petition. Dkt. 70 at 14. Another Northern District of California court faced this same scenario and had this to say:

> You're missing the point, and this is all lawyerly tap dancing. The point is this. You're coming to my court and you're saying the proposition that I should rely on is that these patents are indefinite. You're going to PTAB, and not only are you not mentioning that, you're affirmatively not telling them that you told me that these patents are indefinite, apparently out of fear of this case law. So I don't want to hear about who is doing what. I want you to address the more basic proposition, which is the foundation of judicial estoppel, that you cannot whipsaw courts. You cannot tell in the same case two different courts two different stories.

*IPLearn-Focus LLC v. Microsoft Corp.*, No. 3:14-cv-00151-JD (N.D. Cal. Dec. 12, 2014) (Donato, J.), Ex. A at 18:23-19:9. The situation is no different here. Fitbit is telling two different courts two different stories. If the PTAB relies on Fitbit's position that these claim terms are not indefinite, then Fitbit should be estopped from taking the opposite position here.

Fitbit seeks to explain away its inconsistency by arguing that the PTAB applies the broadest reasonable interpretation standard for determining whether claim terms are governed by 35 U.S.C. § 112(6), but both the Federal Circuit and PTAB have already rejected this argument. In *IPCom GmbH & Co. v. HTC Corp.*, the Federal Circuit held that "§112(6) *sets a limit on how broadly the PTO may construe means-plus-function language* under the rubric of reasonable interpretation, and the PTO may not disregard the structure disclosed in the specification corresponding to such language when rendering a patentability determination." 861 F.3d 1362, 1369-70 (Fed. Cir. 2017) (citations omitted) (emphasis added). The PTAB itself recently stated that "we apply a 'broadest reasonable interpretation' standard, which differs from the claim construction standard applied in district court. For means-plus-function limitations, however, our reviewing court has held that 'the "broadest reasonable interpretation" is that statutorily mandated in [35 U.S.C. § 112] paragraph six.'" *Apple Inc. v. Saint Lawrence Commc'ns LLC*, IPR2017-01077, Paper 7, at 13, 2017 WL

4677859, at *6 (Oct. 16, 2017) (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1194 (Fed. Cir. 1994) (en banc)).  Fitbit's positions before the PTAB and this Court cannot be reconciled.  Fitbit admits that it knowingly and intentionally took these inconsistent positions, and Fitbit is gaining the litigation advantage of an IPR while also arguing indefiniteness in this Court.  If the PTAB institutes review of Immersion's patents before this Court issues its claim construction order, Fitbit will be estopped from taking the position that these terms are indefinite.

## II.   DISPUTED CLAIM TERMS

### A.   "haptic feedback device" *('105 patent, claim 19)*

In the Joint Claim Construction Statement, Fitbit stated that the term "haptic feedback device" should be given its plain and ordinary meaning, or in the alternative, construed as "a device that provides haptic feedback."  In its opening claim construction brief, Immersion accepted Fitbit's alternative construction.  Fitbit now seeks to renege on its proposal, arguing that the term should be given its plain and ordinary meaning and not the alternative construction Fitbit proposed.  Immersion believes that Fitbit's alternative construction is the plain and ordinary meaning of "haptic feedback device" and Fitbit does not explain why the Court should reject its previous proposal.

### B.   "one or more processors configured to receive an input signal and generate a force signal based on the input signal, wherein the input signal is associated with a user-independent event" *('105 patent, claim 19)*

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| This term is governed by 35 U.S.C. § 112(6).<br><br>Function: "receive an input signal and generate a force signal based on the input signal, wherein the input signal is associated with a user-independent event"<br><br>Structure: A microprocessor or other electronic controller, and equivalents thereof, that performs the algorithm of receiving an input signal associated with a user-independent event, and generating one or more electronic signals that define the form of a haptic effect based on the user-independent event applied to a touch device | The limitation is an indefinite means plus function limitation.<br><br>Function: "receive an input signal and generate a force signal based on the input signal, wherein the input signal is associated with a user-independent event"<br><br>Structure: The corresponding structure for "one or more processors" is a microprocessor or other electronic controller, or equivalents thereof.  It is Fitbit's position that the specification fails to disclose a sufficiently-specific algorithm for carrying out the function on the microprocessor or other electronic |

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

| | |
|---|---|
| | controller, such that the claim term is indefinite. |

Fitbit demands a level of specificity for the disclosed algorithm that is not required by the law. The Federal Circuit has repeatedly held that "algorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art." *AllVoice Computing PLC v. Nuance Commc'ns Inc.*, 504 F.3d 1236, 1245 (Fed Cir. 2007). Fitbit cites cases for the proposition that when no algorithm is disclosed, the courts do not evaluate the claim through the lens of a person of skill in the art. This misses the point. There is an algorithm here—it just is not as detailed as Fitbit would like. But it need not be—the Federal Circuit has made clear that as long as the specification discloses an algorithm, "the question is whether the disclosed algorithm, from the viewpoint of a person of ordinary skill, is sufficient to define the structure and make the bounds of the claim understandable." *See Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 748 F.3d 1134, 1141 (Fed. Cir. 2014) (citations omitted).

Here, the specification discloses an algorithm that is sufficient to define the structure and make the bounds of the claim understandable to a person of ordinary skill in the art ("POSITA"). The disclosed algorithm requires receiving an input signal and generating a signal that defines the form of a haptic effect based on the input signal that is applied to a touch device. If the signal generated defines the form of a haptic effect—*e.g.*, whether the haptic effect is a pulse or vibration—then it is within the scope of the claim. If the signal does not define the form of a haptic effect, then it is not within the scope of the claim. If the force signal is based on the input signal, meaning that what is output depends on what is input, then it is within the scope of the claim. If the output signal is independent of the input signal, then it is not within the scope of the claim. Section 112 requires nothing more. Immersion's expert confirmed that this is how a POSITA would interpret the patent. Meldal Decl., Dkt. 66-1 at pages 6-9. Fitbit has failed to present any evidence demonstrating by clear and convincing evidence that a POSITA would not understand the bounds of this algorithm.

**1. Fitbit fails to prove by clear and convincing evidence that a POSITA would not link the disclosed algorithm with user-independent events**

Fitbit tries to wall-off user-independent events from the force signals in the specification, but fails because the specification ties the user-independent events directly to the force signals. For example, the specification discloses the generation of a force signal in response to an input that is "independent of finger position or object state":

> Using one or more actuators coupled to the touchpad 16, a variety of haptic sensations can be output to the user who is contacting the pad . . . Forces output on the pad can be at least in part based on the location of the finger on the pad or the state of a controlled object in the graphical environment of the host computer 10, *and/or independent of finger position or object state*. Such forces output on the touch pad 16 are considered "computer-controlled" since a microprocessor or other electronic controller *is controlling the magnitude and/or direction of the force output of the actuator(s) using electronic signals*.

'105 Patent at 5:6-17 (emphasis added). Fitbit argues this cannot be the user-independent embodiment because it states that the user is "contacting the pad," but of course the user contacts the pad to feel a haptic effect. This does not mean the user's contact *causes* the haptic effect. A POSITA understands that a haptic effect that is independent of the user's finger on the pad and the state of objects on the screen is a user-independent event. Meldal Decl., Dkt. 66-1 at page 7. Fitbit cannot prove by clear and convincing evidence that a POSITA would not link this disclosure with user-independent events.

Fitbit similarly tries to limit the description of the structure of Touchpad 16 at 6:14-43 to only user-dependent events, but Touchpad 16 is used through the specification to provide haptic output in response to user-dependent and user-independent events. *See, e.g.*, '105 Patent at 12:50-51 ("User-independent events can also be relayed to the user using haptic sensations *on the touchpad*.") (emphasis added); 5:6-17 (explaining that Touchpad 16 outputs haptic effects that are "independent of finger position or object state"). The disclosure at 6:14-43 discloses that this touchpad "includes circuitry that *receives signals from the host* and outputs tactile sensations in accordance with the host

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

signals using one or more actuators." *Id.* at 6:19-22 (emphasis added). The signals received from the host, i.e., the force signal received from the processor, can be a command that includes "the type of haptic sensation and parameters describing the commanded haptic sensation." *Id.* at 6:25-27. Fitbit tries to divorce this disclosure from user-independent events because the disclosure states that the touchpad can receive user inputs. But of course the touchpad can receive user inputs; embodiments described elsewhere in the specification output haptic effects in response to these user inputs. Nothing in this general description of Touchpad 16 states that it is limited to outputting haptic effects in response to user inputs, and as shown above, the specification discloses that this same Touchpad 16 outputs haptic effects in response to user-independent events. Fitbit cannot prove by clear and convincing evidence that a POSITA would not link the disclosure of Touchpad 16 to the user-independent events.

Moreover, the disclosures are more than adequate—a person of skill in the art would look at disclosures relating to user-dependent events as similar embodiments to determine how to provide a haptic output in response to user-independent events. In *Chicago Board*, the Federal Circuit rejected a defendant's argument, strikingly similar to Fitbit's argument here, that a claim term lacked structural support because the structural support corresponded to a different but similar embodiment. 748 F.3d at 1142. The specification described two separate processes, "pro rata allocating" and "pro rata matching," and the defendant argued that "any discussion of pro rata *allocating* cannot provide structure for pro rata *matching*." *Id* (emphasis in original). The Federal Circuit rejected this argument, holding that the defendant failed to prove by clear and convincing evidence that "a person of ordinary skill in the art would [not] look to the similar pro rata allocating process when implementing pro rata matching." *Id*. Similarly here, Fitbit cannot prove that a POSITA would not look to haptic outputs in response to user-dependent events to understand how to provide haptic outputs in response to user-independent events.

McKool Smith, P.C.
Redwood Shores, CA

**2. Fitbit fails to prove by clear and convincing evidence that the specification does not disclose how to generate a force signal based on an input signal**

Fitbit argues that the specification does not disclose how to generate a force signal, but ignores the repeated disclosure that the processor generates a force signal by generating a signal that defines the form of a haptic effect. No more is required. For example, the specification discloses that to output jolts, vibrations, or textures based on the input signal, the processor generates an "electronic signal" that "control[s] the magnitude and/or direction of the force output of the actuator(s) . . . ." '105 Patent at 5:15-17. Fitbit's expert did not dispute Dr. Meldal's opinion that a POSITA understands that controlling the magnitude and direction of the force output of the actuator defines the form of the haptic effect. *See* Meldal Decl., Dkt. 66-1 at pages 7-8. Similarly, the specification discloses that the signal can be a command "*including*, for example, the type of haptic sensation and parameters describing the commanded haptic sensation." '105 Patent at 6:25-27 (emphasis added). The use of the word "including" shows that this excerpt does not describe the result of the force signal, as Fitbit argues, but the content of the force signal. The specification also discloses that the form of the haptic effect is based on the user-independent event, *e.g.*, a first vibration signifies one event and a second vibration signifies another event. *See, e.g.*, *id.* at 12:56-61 ("[V]ibrations of different frequency can each be used to differentiate different events or different characteristics of events . . . ."); 13:24-27 ("Force sensations can also be output based on user-independent events in the game or simulation, such as pulses when bullets are fired at the user's character.").

### 3. Fitbit's detailed implementations of the algorithm are not required for a POSITA to determine the bounds of the claim

Fitbit identifies highly detailed implementations of the disclosed algorithm and argues that the claim is indefinite for not disclosing them, Dkt. 70 at 7-8, but section 112(6) "does not raise the specter of an unending disclosure of what everyone in the field knows." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384 (Fed. Cir. 2011) (quoting *Atmel Corp. v. Info. Storage Devices*, 198 F.3d 1374, 1382 (Fed.Cir.1999)). The level of detail Fitbit demands is arbitrary. If the specification had provided the level of detail Fitbit provides in its brief, Fitbit would argue that § 112(6) requires more. A defendant can always argue more detail is required, but "[t]he test for definiteness asks whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *AllVoice*, 504 F.3d at 1240. The patentee is not "required to produce a listing of source code or a highly detailed description of the algorithm to be used to achieve the claimed functions in order to satisfy 35 U.S.C. § 112 ¶ 6." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1338 (Fed. Cir. 2008). A POSITA does not need Fitbit's implementation details to understand the bounds of the algorithm, and Fitbit has fallen short of its clear and convincing burden of proving that a POSITA would need these details.

For example, Fitbit argues that the algorithm must disclose how to "create the claimed 'association' between the input signal and user-independent event," Dkt. 70 at 7, but the claimed function does not require the processor to associate the input signal with a user-independent event. Fitbit similarly argues that the algorithm must disclose how "to classify the input as one which relates to the given event," *id.*, but again, the claimed function does not require classifying the input as relating to a particular event. A POSITA does not need to know whether and how these unclaimed functions are performed to understand the scope of the claim or how to implement the algorithm.

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

Fitbit also contends that the specification must disclose how to associate user-independent events with haptic effects—*e.g.*, associate an email with a vibration and calendar reminder with a pulse. Dkt. 70 at 8. But the inventors did claim a new technique for associating inputs with outputs in a processor. The inventors claimed receiving an input signal associated with a user independent event and generating a force signal based on the input. How a POSITA chooses to associate these inputs and outputs, *e.g.*, by using a lookup table as Fitbit suggests, or any number of other ways, is a trivial detail for a POSITA. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1340 (Fed. Cir. 2016) ("The fact that this algorithm relies, in part, on techniques known to a person of skill in the art does not render the composite algorithm insufficient under § 112 ¶ 6. Indeed, this is entirely consistent with the fact that the sufficiency of the structure is viewed through the lens of a person of skill in the art and without need to disclose structures well known in the art.") (citations omitted). Fitbit failed to prove by clear and convincing evidence that a POSITA needs to know what well-known technique is used to match inputs with outputs in the processor to understand the scope of the claim. If the output of a haptic effect depends on the input of a force signal, it is within the scope of the claim. If the output does not depend on the input, it is not within the scope of the claim. *Typhoon Touch*, 659 F.3d at 1384 ("If the claims when read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, §112 demands no more.") (citations omitted).

Finally, Fitbit argues that in addition to describing the signal generated by the processor, the specification also must disclose what component within the processor generates the force signal, *e.g.*, the ALU or GPU, both of which are well-known structures for generating signals. But a POSITA implementing the claim on a processor *would not ordinarily decide* whether the ALU or GPU component of the processor generates the signal. After the POSITA writes the source code, the POSITA will use automatic tools such as a compiler to compile the source code, and the tools

determine which components generate the signal. *Cf.* Meldal Decl., Dkt. 66-1 at pages 7-9. Whether the processor uses an ALU, GPU, or any of its other components to generate the signal is a trivial detail for a POSITA and irrelevant to the invention. The inventors did not claim a new technique or component for generating signals in a processor; they created a new signal that defines the form of a haptic effect. Fitbit failed to prove that a POSITA must know what component within the processor generates the claimed "force signal" to understand the scope of the claim. If the generated signal defines the form of a haptic effect, it is within the scope of the claim. If it does not define the form of a haptic effect, then it is not within the scope of the claim. This is all § 112 requires.

#### 4. The case law supports the conclusion that the structure here is sufficiently definite

Fitbit argues that *Typhoon Touch* and *AllVoice* are distinguishable because they disclose algorithms and the '105 Patent does not, but does not distinguish the algorithms in *Typhoon Touch* or *AllVoice* on the merits, and does not even mention Immersion's other cited cases, which show that receiving an input and generating an output based on the input is a sufficiently definite algorithm. *See, e.g.*, *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1343 (Fed. Cir. 2011) (receiving bits as input and generating frames with equal number of bits as output is a sufficiently definite structure); *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG, 2017 WL 550453, at *7 (N.D. Cal. Feb. 10, 2017) (receiving downloadable as input and generating security profile as output is a sufficiently definite structure); *Seer Systems, Inc. v. Beatnik, Inc.*, No. C 03-04636-JSW, 2006 WL 733502, at *5 (N.D. Cal. Mar. 22, 2006) (receiving music control signals as input and passing them through a synthesizer engine to sequencer is a sufficiently definite structure).

Fitbit's cited cases are inapposite because the patentees identified no algorithm in the specification, while here, the specification discloses that to "generate a force signal based on the

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

input signal," the processor must generate a signal that defines the form of a haptic effect. *Cf. ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012) (finding means for generating a purchase order indefinite because the specification said *nothing* about how the purchase order should be generated); *Aristocrat*, 521 F.3d at 1334 (finding "control means" indefinite because the specification stated only that the function can be implemented "on any standard microprocessor"); *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383-85 (Fed. Cir. 2008) (finding "means for assigning a level of access to and control of each data file" indefinite because the patentee said it can be performed by "any computer-related device or program that performs the function of access control").

Fitbit also cites an irrelevant IPR proceeding for a different patent, U.S. Patent No. 8,659,571 (the "'571 Patent"), in a different patent family, claiming a different function (citing *Apple Inc. v. Immersion Corp.*, No. IPR2016-01372, 2017 WL 376909 (P.T.A.B. Jan. 11, 2017)). The claimed function was generating a parameter unique to the patent called the "dynamic interaction parameter." The PTAB decided *sua sponte* that the term should be analyzed under §112(6) and then, without the benefit of briefing from either party, decided that the specification disclosed no algorithm for generating the parameter. Immersion has appealed the PTAB's finding. In any event, the '571 Patent is distinguishable because no party alleged that the specification disclosed a structure sufficiently definite for a POSITA to understand how to implement that parameter. Here, the '105 Patent specification provides enough information for a POSITA to understand how to generate a force signal based on the input signal.

**5. The force signal is a signal that defines a haptic output to a touch device**

Fitbit does not dispute that in every embodiment in the specification the force signal is applied to a touch device. Dkt. 70 at 9. The disclosure of user-independent events states that user-independent events are "relayed to the user using haptic sensations *on the touchpad*." '105 Patent at

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

12:50-51 (emphasis added); *see also* 5:6-17 (explaining that Touchpad 16 outputs haptic effects that are "independent of finger position or object state"). The Federal Circuit has consistently held that means plus function terms are limited to the embodiments in the specification. *See, e.g., Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012) ("Our case law is clear that a means-plus-function claim limitation is limited to the structures disclosed in the specification. . . ."); *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001) ("The literal scope of a properly construed means-plus-function limitation does not extend to all means for performing a certain function. Rather, the scope of such claim language is sharply limited to the structure disclosed in the specification and its equivalents.").

### C. "generate a force signal based on the input signal" *('105 patent, claim 19)*

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary given agreement term is governed by 112(6). | "generate a signal causing a haptic effect depending on the input signal" |

If the Court adopts Immersion's proposed structure, there will be no dispute for the Court to resolve. First, Immersion's proposed structure provides that the force signal is "a signal that defines the form of a haptic effect." This is "a signal causing a haptic effect," as Fitbit requests in this proposed construction. Thus the first part of Fitbit's construction would not add any new requirement to the claim. Second, Fitbit argues that "based on" should be changed to "depending on" to reflect that the force signal generated by the processor depends on the input signal. Immersion agrees that the signal generated by the processor depends on the input signal, and suggests that every user-independent event must use a different haptic effect. The specification does not require every user-independent event to use different haptic effects. If, for example, a device outputs force signals signifying three types user-independent events, two types using a vibration and one type using a pulse, the force signal still is "based on" on the input signal. So long as a choice is made as to a haptic effect in light of the force signal, the haptic effect is "based on" the force signal.

McKool Smith, P.C.
Redwood Shores, CA

**D. "periodic"** ***('299 Patent, claim 14)***

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "Occurring at regular intervals" |

Fitbit fails to satisfy its high burden of showing that the patentee (1) redefined the term periodic to mean only "occurring at regular intervals," or (2) disavowed "occurring at irregular intervals." To show redefinition, "[i]t is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) (citations omitted). To show disavowal, the patentee must make "expressions of *manifest exclusion or restriction*, representing a clear disavowal of claim scope." *Id*. (citations omitted) (emphasis added). Fitbit shows neither.

*First*, Fitbit failed to rebut the intrinsic and extrinsic evidence showing that the plain meaning of "periodic" may refer to regular or irregular intervals. The specification states people "*periodically* replac[e] old toothbrushes." '299 Patent at 1:29-30 (emphasis added). It is highly unlikely the patentee was suggesting that people replace toothbrushes at *identical* intervals as Fitbit suggests. Also, both the American Heritage Dictionary and Webster's Encyclopedic Unabridged Dictionary of the English Language define periodic as referring to regular and irregular intervals.

*Second*, Fitbit failed to identify any express redefinition of "periodic" or disavowal of irregular intervals. Fitbit points to the specification's separate identification of "periodic time period" and "plurality of time periods"[1] and argues this shows the patentee intended to redefine

[1] Fitbit also argues that the comparison of "a plurality of haptic outputs *of similar or different durations*" and "a periodic haptic output" shows periodic does not include irregular time intervals, but the phrase "of similar or different durations" refers to the duration of the haptic effects, not the duration of time intervals between haptic effects.

periodic to only include regular time periods, but the Federal Circuit rejected this same argument in *Thorner*. *See* 669 F.3d at 1367-68. In *Thorner*, the defendant argued that the word "attached" was limited to attached "to the outside of an object" because the specification consistently used "attached" for attaching to an outside surface, and a different term, "embedded," for attaching to an inner surface. The Federal Circuit held that this "does not rise to the level of either lexicography or disavowal" because "[b]oth exceptions *require a clear and explicit statement* by the patentee." *Id.* (emphasis added) (citations omitted). Fitbit can point to no clear and explicit statement excluding irregular intervals from the term "periodic," and so its proposed construction should be rejected.

### E. "a processing device that receives the sensor output and accumulates counts associated with the sensor output, the processing device providing an output to the vibrotactile device once a threshold associated with the accumulated counts is reached." *('299 patent, claim 14)*

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| This term is governed by 35 U.S.C. § 112(6).<br><br>Function: "receives the sensor output and accumulates counts associated with the sensor output, and provides an output to the vibrotactile device once a threshold associated with the accumulated counts is reached"<br><br>Structure: Processing device 22 and equivalents thereof, that performs the algorithm in Figure 3 and generating one or more electronic signals that define the form of a haptic effect | The limitation is an indefinite means plus function limitation.<br><br>Function: "receive the sensor output, accumulate counts associated with the sensor output, and provide an output to the vibrotactile device once a threshold associated with the accumulated counts is reached"<br><br>Structure: The corresponding structure for "a processing device" is Processing device 22 and equivalents thereof. It is Fitbit's position that the specification fails to disclose a sufficiently-specific algorithm for carrying out the function on the Processing device 22 or equivalents thereof, such that the claim term is indefinite. |

A POSITA would (1) recognize Figure 3 as the algorithm corresponding to the claimed function and (2) understand the bounds of the algorithm. Meldal Decl., Dkt. 66-1 at pages 11-13. That is all the law requires. *See, e.g.*, *AllVoice*, 504 F.3d at 1241 ("[A] means-plus-function clause is indefinite if a person of ordinary skill in the art *would be unable to recognize the structure in the*

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

McKool Smith, P.C.
Redwood Shores, CA

*specification* and associate it with the corresponding function in the claim.) (emphasis added); *id.* at 1245 ("[A]lgorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art."). Fitbit argues that a POSITA would not recognize Figure 3 as an algorithm because it provides no more detail than the claim, but Figure 3 implements the claimed function through use of a "motion parameter" that does not appear in the claim.

Figure 3 shows how to use the "motion parameter" to carry out the claimed function.[2] Figure 3 defines the motion parameter as a "parameter related to the motion of an object," and the specification explains that it can be "a count of the number of strokes that the user exerts on the object" or "a stroke force or stroke length." '299 patent at 6:64-7:1. Figure 3 shows that the motion parameter is created at the sensor and sent to the processor, and that the processor sums each received motion parameter with previously received motion parameters. The specification explains that "[t]his summation procedure creates a running total or accumulative amount associated with the motion parameter being sensed." *Id.* at 6:62-64. Figure 3 discloses that the processor determines whether the accumulative amount of motion parameters has reached a "predetermined threshold," and if so, generates an alert. The specification discloses a detailed algorithm for carrying out the claimed function, Meldal Decl., Dkt. 66-1 at pages 11-13, and Fitbit has not demonstrated by clear and convincing evidence that a POSITA would not recognize this as an algorithm.

*Noah Systems, Inc. v. Intuit Inc.* is inapposite because in that case the specification did not "identify the method for performing the function." 675 F.3d 1302, 1317 (Fed. Cir. 2012). The claim provided that a user can perform one of "entering, deleting, reviewing, adjusting and processing

---

2 Fitbit suggests that Figure 3 is limited to a method for monitoring brush strokes, but the specification states that Figure 3 "is a flow chart illustrating an embodiment of a method for handling aspects of motion that a user physically exerts on an object." '299 patent at 6:47-49

[data],” but the specification merely parroted the claim language and did not disclose how to implement those claimed functions on a computer. Here, the ’299 Patent specification discloses exactly how to implement the claimed function on a computer using the “motion parameter,” as shown above.

Finally, Fitbit’s hypothetical embodiments of Figure 3 are irrelevant because this level of detail is not required for a POSITA to determine the bounds of the claim. Fitbit never argues in its brief that a POSITA would be unable to determine the bounds of Figure 3.

## III. CONCLUSION

For the foregoing reasons, Immersion respectfully requests that the Court adopt its proposed constructions of the disputed claim terms.

MCKOOL SMITH, P.C.
REDWOOD SHORES, CA

DATED: April 26, 2018

Respectfully submitted,

MCKOOL SMITH, P.C.

By: */s/ Courtland L. Reichman*__
Courtland L. Reichman
(California Bar No. 268873)
Jennifer P. Estremera
(California Bar No. 285185)
McKool Smith, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, California 94065
Telephone: (650) 394-1400
Facsimile: (650) 394-1422
creichman@mckoolsmith.com
jestremera@mckoolsmith.com

John B. Campbell (Admitted Pro Hac Vice)
Kathy H. Li (Admitted Pro Hac Vice)
MCKOOL SMITH P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744
jcampbell@mckoolsmith.com
kli@mckoolsmith.com